**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JEROME BURNAM, | ) | |
| | ) | 20-cv-1800 |
| Petitioner, | ) | |
| | ) | **ELECTRONICALLY FILED** |
| v. | ) | |
| | ) | |
| MARK V. CAPOZZA, Superintendent of | ) | |
| the State Correctional Institution at | ) | |
| Fayette, | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION DENYING "PETITION TO REOPEN HABEAS
PROCEEDING VIA RULE 60(B)(5) & (6) OF THE FEDERAL RULES OF CIVIL
PROCEDURE" (Doc. No. 1)**

Pending before the Court is Petitioner Jerome Burnam's "Petition to Reopen Habeas

Proceeding via Rule 60(b)(5) & (6) of the Federal Rules of Civil Procedure." (Doc. No. 1).

For the reasons that follow, the petition will be denied.

**I.      Relevant Background**

This is the second challenge by Petitioner, Jerome Burnam ("Burnam"), to the December

7, 1998, sentence imposed on him at Criminal Case Nos. CP-02-CR-0001399-1989 and CP-02-

CR-00013518-1988 by the Court of Common Pleas of Allegheny County. The underlying factual

and procedural history of Burnam's criminal case and first federal habeas case is set forth in the

Memorandum Order filed on April 14, 2010 at Case No. 09-cv-0108, a copy of which is attached

as Exhibit A and incorporated herein by reference.  Therefore, the Court need not restate in detail

the relevant background again in this Memorandum Opinion.

In 1991, Burnam pled guilty generally to the charge of Criminal Homicide and was

sentenced to death.   In 1998, Burnam was granted a new sentencing hearing and on December 7,

1998, Burnam's death sentence was vacated and he was resentenced to life imprisonment.  On January 29, 2009, Burnam filed a habeas petition in this Court at Case No. 09-cv-0108 in which he raised  fourteen claims attacking the December 7, 1998 sentence.   On April 14, 2010, the Petition was dismissed as this Court found that all the claims raised in the Petition were without merit. *See* attached Exhibit A.

Now, over ten years after his habeas petition was denied on the merits, Burnam seeks to reopen Case No. 09-cv-0108, raising an entirely new claim.  Burnam contends that he "was never appropriately provided with a reason[] why his death penalty was set aside[] and a new resentence place upon him." Pet. at 10 (Doc. No. 1). He requests that this Court grant habeas relief and transfer the case to the Court of Common Pleas of Allegheny County for resentencing because the sentencing judge failed to "submit the Evidentiary Hearing Transcripts and an Opinion as to the reasons for the re-sentence."  Id. at 15.

## II.    Petitioner's Pending Petition

Because this is a federal habeas action, the Court must initially determine whether Burnam's petition is actually an unauthorized second or successive petition or whether it is a true Rule 60(b) motion.  In the habeas context, a motion labeled as a Rule 60(b) motion should be treated as a second or successive petition if it "seeks to add a new ground for relief" from the underlying conviction or "attacks the federal court's previous resolution of a claim on the merits." *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005).

Conversely, said motion should be properly treated as a Rule 60(b) motion when it "attacks, not the substance of a claim on the merits, but some defect in the integrity of the federal habeas proceedings." *Id.*; *see Pridgen v. Shannon*, 380 F.3d 721, 727 (3d Cir. 2004) ("[I]n those

instances in which the factual predicate of a petitioner's Rule 60(b) motion attacks the manner in which the earlier habeas judgment was procured and not the underlying conviction, the Rule 60(b) motion may be adjudicated on the merits.").  Burnam may not circumvent the rules of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") by couching an unauthorized second or successive habeas petition as a motion under Rule 60(b).

## III.    Federal Rule of Civil Procedure 60(b)

Federal Rule of Civil Procedure 60(b) "allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances including fraud, mistake, and newly discovered evidence." *Gonzalez,* 545 U.S. at 528.

In the habeas context, a motion labeled as a Rule 60(b) motion should be treated as a second or successive petition if it "seeks to add a new ground for relief" from the underlying conviction or "attacks the federal court's previous resolution of a claim on the merits." *Gonzalez*, 545 U.S. at 532.  AEDPA mandates that before a petitioner may file a second or successive habeas corpus petition under 28 U.S.C. § 2254 challenging the same judgment of sentence that he previously challenged in federal habeas, he must obtain an order from the court of appeals authorizing the district court to consider the petition. 28 U.S.C. § 2244(b)(3)(A).  *See, e.g., Magwood v. Patterson*,  561 U.S. 320 (2010). Once a petitioner moves for authorization to file a second or successive petition, a three-judge panel of the court of appeals must decide within thirty days whether there is a prima facie showing that the application satisfies § 2244's substantive requirements, which are set forth in § 2244(b)(2). *See* 28 U.S.C. § 2244(b)(3). AEDPA's allocation of "gatekeeping" responsibilities to the courts of appeals has divested

district courts of jurisdiction over habeas petitions that are second or successive filings. *See, e.g., Burton v. Stewart,* 549 U.S. 147 (2007).

As noted previously, however, said motion is properly treated as a Rule 60(b) motion when it "attacks, not the substance of a claim on the merits, but some defect in the integrity of the federal habeas proceedings." *Gonzalez*, 545 U.S at 532; *see Pridgen v. Shannon*, 380 F.3d 721, 727 (3d Cir. 2004)

Thus, the Court's first determination must be whether Burnam's motion constitutes a second or successive habeas petition or is a true Rule 60(b) motion.   If I conclude that the motion is actually an unauthorized second or successive habeas petition, it must be dismissed for lack of subject matter jurisdiction or be transferred to the court of appeals for consideration as an application to file a second or successive petition. *Gonzalez,* 545 U.S. at 538.  However, if I conclude that the motion is a true Rule 60(b) motion, the motion will be ruled upon without precertification by the Court of Appeals. *Id*. at 531-32.

## IV.   Discussion

Burnam's motion is exactly the sort of motion the Supreme Court has stated is in actuality a second or successive petition - the factual predicate of his claim attacks his underlying state court conviction by raising a new ground for relief. *Id*. at 530-31; *Pridgen,* 380 F.3d at 727. Accordingly, the Court holds that Burnam's motion should properly be treated as a second or successive petition and not as a Rule 60(b) motion.  As such, this Court lacks jurisdiction to consider it in the absence of prior authorization by the Court of Appeals for the Third Circuit.

Alternatively, Burnam fares no better even if the Court were to conclude that Burnam's motion should be treated as a true Rule 60(b) motion. Rule 60(b) provides a basis, but only a limited

basis, for a party to seek relief from a final judgment or order.  In *Gonzalez,* the Supreme Court

stated,

> Rule 60(b) has an unquestionably valid role to play in habeas cases. The Rule is often
> used to relieve parties from the effect of a default judgment mistakenly entered
> against them, *e,g,, Klapprott* [*v. United States*, [335 U.S. 601, 615 (1949)] 69 S.Ct.
> 384 (opinion of Black, J.), a function as legitimate in habeas cases as in run-of-the-
> mill civil cases. The Rule also preserves parties' opportunity to obtain vacatur of a
> judgment that is void for lack of subject-matter jurisdiction-a consideration just as
> valid in habeas cases as in any other, since absence of jurisdiction altogether deprives
> a federal court of the power to adjudicate the rights of the parties. *Steel Co. v.
> Citizens for Better Environment*, 523 U.S. 83, 94, 101, 118 S.Ct. 1003, 140 L.Ed.2d
> 210 (1998). In some instances, we may note, it is the State, not the habeas petitioner,
> that seeks to use Rule 60(b), to reopen a habeas judgment granting the writ. *See, e.g.,
> Ritter v. Smith*, 811 F.2d 1398, 1400 (C.A.11 1987).

*Gonzalez*, 545 U.S. at 536.  Rule 60(b)'s "whole purpose is to make an exception to finality." *Id*. at

529.  Burnam wants this Court to grant relief under Rule 60(b) on a claim which has never been

presented to this Court and, thus, entered judgment has not been entered. Therefore, Rule 60(b) is

not the proper vehicle through which to seek to have this Court review his new claim.

## V.    Conclusion

For the foregoing reasons, Burnam's pending motion will be dismissed without prejudice.

Reasonable jurists would all agree that Burnam has not even attempted to show that he obtained

leave from the United States Court of Appeals for the Third Circuit to file the instant second or

successive habeas corpus petition.  Reasonable jurists would also agree that this Court lacks

jurisdiction and authority to consider the successive habeas petition without proof of such leave.

Because jurists of reason would not find debatable the Court's disposition of Burnam's motion –

whether construed in whole or in part as a second or successive habeas petition or a true Rule 60(b)

motion – a certificate of appealability will be denied.  28 U.S.C. § 2253; *Slack v. McDaniel*, 529

U.S. 473, 484 (2000).

An appropriate Order will issue.


s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

Dated:  December 4th, 2020

cc:      JEROME BURNAM
         BA-6023
         SCI Fayette
         4800 Overlook Drive
         LaBelle, PA 15450-1050
         (via U.S. First Class Mail)

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


| | |
|---|---|
| JEROME BURNAM, | ) |
| | ) |
| Petitioner | ) |
| | ) |
| vs. | ) Civil Action No. 09-108 |
| | ) Judge Arthur J. Schwab/ |
| BRIAN COLEMAN, Superintendent of the | ) Chief Magistrate Judge Amy Reynolds Hay |
| State Correction Institution at Fayette | ) |
| Overlook, Labelle, PA; THE DISTRICT | ) |
| ATTORNEY OF THE COUNTY OF | ) |
| ALLEGHENY; THE ATTORNEY | ) |
| GENERAL OF THE STATE OF | ) |
| PENNSYLVANIA, | ) |
| | ) |
| Respondents | ) |


**MEMORANDUM ORDER**

The above-captioned pro se habeas corpus petition filed pursuant to 28 U.S.C. § 2254

was received by the Clerk of Court on January 29, 2009, and was referred to United States

Magistrate Judge Amy Reynolds Hay for pretrial proceedings in accordance with the Magistrate

Judges Act, 28 U.S.C. § 636(b)(1), and the then in-force Local Rules 72.1.3 and 72.1.4, which do

not materially differ from the now in force Local Civil Rules 72.C and D.

The now Chief Magistrate Judge's Report and Recommendation, Dkt. [23], filed on

March 9, 2010, recommended that the petition be denied and that a certificate of appealability

also be denied. Service was made on the Petitioner at his place of confinement. The Petitioner

was informed that in accordance with both the Magistrate Judges Act, 28 U.S.C.§ 636(b)(1)(B)

and (C), and with the local rules governing Magistrate Judges, that he had a specific period of

time in which to file his objections.  After being granted an extension of time, Petitioner filed his objections.  Dkt. [27].

None of the objections merit rejection of the report nor extended comment.  We briefly note that Petitioner claims a breach of contract when the sentencing judge imposed a harsher sentence upon Petitioner's retrial.  The Report found that this claim was both procedurally defaulted and, in the alternative, meritless.  The Report noted that Petitioner had failed to establish the terms of any plea agreement that would bar the imposition of a harsher sentence.  Dkt. [23] at 17.  In his objections, Petitioner contends that he did establish the terms of the alleged plea contract and he points to the trial transcript of February 12 to 15 at pp. 11 to 12.  Dkt. [27] at 3 to 4.  However, a review of those pages of the trial transcript to which Petitioner points, simply fails to establish that there was a term of his plea agreement that barred the trial court from imposing a harsher punishment on the retrial.  Dkt. [14-6] at 12 to 13.[1]

Throughout his objections, Petitioner prays for an evidentiary hearing in this court.  We note that Petitioner did have evidentiary hearings conducted in the State Courts, although he did not have any such hearing in the PCRA proceedings.  However, we find that Petitioner has not carried his heavy burden to show entitlement to an evidentiary hearing in this Court under  28 U.S.C. § 2254(e)(2).  McLeod v. Jones, No. 03-74122, 2005 WL 2033535, at *5 (E.D.Mich. Aug. 23, 2005)(habeas petitioner "has not met his burden under 28 U.S.C. § 2254(e)(2) to be granted an evidentiary hearing relative to this claim.").

---

[1] The pages cited are citations to the page numbers generated by the computerized program CM-ECF. The original page numbers placed on the transcript by the stenographer are in fact pages 11 to 12.

2

Relatedly, to the extent that Petitioner is challenging the factual findings of Judge Kelly,[2]

based upon the lack of an evidentiary hearing before Judge Kelly, (even though one was

conducted before Judge Dauer on Petitioner's post trial motions, prior to Judge Dauer's passing

away), Petitioner has failed to convince this court that we should not afford AEDPA deference to

those findings by Judge Kelly. Judge Kelly's opinion was based upon the many evidentiary

proceedings held in the course of Petitioner's State Court prosecution. Dkt. [16-3] at 36 ("The

Opinion is based upon the plea and trial record as well as the hearing on Post-Trial Motions held

on May 28, 1998."). Hence, we find that Judge Kelly's opinion and findings based upon the

record, including testimony from Petitioner's attorney, are entitled to AEDPA deference[3] and

---

[2] See, e.g., Dkt. [27] at 5 (alleging that Judge Kelly's findings are speculation and conjecture). See also Dkt. [27] at 11 (arguing the Judge Kelly's disposition of Petitioner's claim regarding the withdrawal of Attorney Rubenstein "need[s] to be overlooked at this time."); Id., at 12 (noting that "Judge Kelly never held any proceeding with Petitioner").

[3] Cf. Mendiola v. Schomig, 224 F.3d 589 (7th Cir. 2000). In Mendiola, the habeas petitioner therein had raised a contention that the presumption of correctness should not apply because the state trial court had not conducted a hearing on his motion for a new trial that was based on a witness who changed her testimony. The Seventh Circuit Court speaking through Judge Easterbrook, held the following:

> § 2254(e)(1) does not require findings to be based on evidentiary hearings. This is a major difference between § 2254(e), part of the Antiterrorism and Effective Death Penalty Act of 1996, and its predecessor 28 U.S.C.(1994 ed.) § 2254(d). The former statute required deference to "a determination after a hearing on the merits of a factual issue" unless one of eight conditions was satisfied. Section 2254(e), by contrast, omits any mention of a hearing. If a state court's finding rests on thin air, the petitioner will have little difficulty satisfying the standards for relief under § 2254. But if the state court's finding is supported by the record, even though not by a "hearing on the merits of [the] factual issue", then it is presumed to be correct.

Id. at 592-93. This court finds the Seventh Circuit Court's reasoning persuasive, as has the Court of Appeals for the Third Circuit. Lambert v. Blackwell, 387 F.3d 210, 238 (3d Cir. 2004) (in
(continued...)

3

Petitioner has not carried his burden to rebut the presumptive correctness of the factual findings
contained therein, nor has he otherwise demonstrated that Judge Kelly's disposition is contrary to
or an unreasonable application of then extant Supreme Court precedent.

Any other objection not specifically addressed herein is deemed to have been adequately
addressed in the Report.

After *de novo* review of the pleadings and the documents in the case, together with the
Report and Recommendation and objections, the following order is entered:

**AND NOW**, this *14th* day of *April*, 2010;

**IT IS HEREBY ORDERED** that the Petitioner's habeas petition is
DENIED. A certificate of appealability is DENIED.

**IT IS FURTHER ORDERED** that the Report and Recommendation,
Dkt. [23], filed on March 9, 2010 by Chief Magistrate Judge Hay, is adopted as the opinion of
the Court, as supplemented by this Memorandum Order. Any other pending motions are
DENIED as moot. The Clerk is to mark the case closed.

Petitioner is advised that he has the right for thirty (30) days to file a notice of appeal
from our order denying his petition, see 28 U.S.C. § 2253(a); Fed. R.App. P. 4(a)(1)(A), and that
our denial of a certificate of appealability does not prevent him from doing so, as long as he also
seeks a certificate of appealability from the court of appeals. See Federal Rule of Appellate

---

[3](...continued)
dicta, the court noted that "AEDPA has changed the procedural framework for deference in three
ways. . . . Second, the habeas statute no longer explicitly conditions federal deference to state
court factual findings on whether the state court held a hearing.")(citing Mendiola). Thus, if no
evidentiary hearing is required for AEDPA deference, certainly AEDPA deference should be
given to Judge Kelly's opinion, based as it was, upon multiple evidentiary proceedings, even if
Judge Kelly was not himself the one to preside over those hearings.

Procedure 22(b)(1).

Arthur J. Schwab
United States District Judge

Dated: April 14, 2010

cc:    The Honorable Amy Reynolds Hay
       Chief United States Magistrate Judge

       Jerome Burnam
       354701
       Muskegon Correctional Facility
       2400 S. Sheridan Drive
       Muskegon, MI 49442-6298

       Counsel of Record via CM-ECF

5

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEROME BURNAM, ) | |
| ) | |
| Petitioner ) | |
| ) | |
| vs. ) | Civil Action No. 09-108 |
| ) | Judge Arthur J. Schwab/ |
| BRIAN COLEMAN, Superintendent of the ) | Chief Magistrate Judge Amy Reynolds Hay |
| State Correction Institution at Fayette ) | |
| Overlook, Labelle, PA; THE DISTRICT ) | |
| ATTORNEY OF THE COUNTY OF ) | |
| ALLEGHENY; THE ATTORNEY ) | |
| GENERAL OF THE STATE OF ) | |
| PENNSYLVANIA, ) | |
| ) | |
| Respondents ) | |

## REPORT AND RECOMMENDATION

I.  Recommendation

It is respectfully recommended that the Section 2254 petition for writ of habeas corpus be dismissed.   A certificate of appealability should likewise be denied.

II.  Report

Presently before the Court is the Petition for Writ of Habeas Corpus filed by Jerome Burnam ("Petitioner").  Petitioner brings this Section 2254 habeas petition seeking to attack his 1989 state court convictions.  Petitioner raises a multitude of claims, including alleged trial court errors and several ineffective assistance of counsel claims.  Because the state courts rejected most, if not all of the claims on the merits, and because Petitioner fails to show that the state courts' disposition of his claims was contrary to or an unreasonable application of United States Supreme Court precedent, his petition should be denied.

**Relevant Factual and Procedural History**

Petitioner was arrested on very date of the murder, not too long after the stabbing of the victim, 68-year-old Mary Hopson.  He had blood stains on his pants.[1]  After being Mirandized, Petitioner gave the police a statement that because he felt he needed money and he knew the victim ran a store out of her apartment, "he would go down and rob Miss Mary on the first floor."  State Court Record ("SCR") Notes of Trial Testimony ("NTT"), Dkt. [14-9] at 13, lines 9-12.  Petitioner further stated that he intentionally gave her a one dollar bill, knowing that the can of pop he was going to buy only cost $ 0.75 cents so that the victim would have to get change and that would give him the opportunity to see if she were alone in the apartment.  Id., at 14, lines 5 - 14. Petitioner confessed that as the victim left for her bedroom to get the change, he saw a knife in the apartment, retrieved it, held it behind his back, and as the victim came out of the bedroom to give him his change, he started to stab her.  Id., at 14, lines 12 -20.   She managed to escape into a different bedroom and lock the door behind her.  Id., at 14 to 15.   Petitioner attempted to break into the bedroom but felt he was making too much noise and so stopped doing so.  He listened but could not hear any noise from the bedroom and so he thought the victim was dead.  Id., at 15 to 16.   Petitioner decided to leave the apartment and return later.  As well, in the course of his attacking the victim, Petitioner cut his own finger and so left the apartment to wrap a rag around his finger.  Id.  The victim, in fact, was not yet dead and as Petitioner came back downstairs he saw her leaving her apartment.  He tried to grab her but she got outside of the apartment building and people saw her and so he ran away.  Id.  The people who surrounded the

---

[1]  The following facts are taken mostly from the Answer, however, they are amply reflected in the Trial Court's Opinion in support of denying post verdict motions. Dkt. [15-8] at 9 to 11.

victim heard her say that it was Petitioner who had robbed and stabbed her.  NTT 54, 82, 104, 105, 108, 109, 113, 164, 166.

On June 26, 1989, Petitioner appeared before the Honorable Joseph H. Ridge of the Allegheny County Court of Common Pleas for a suppression and pretrial motions proceeding. Attorneys Mark Rubenstein and William Brennan, both from the Office of Public Defender, represented Petitioner.  Judge Ridge ultimately denied the suppression motion and ruled that Petitioner's confession would be permitted to come into evidence at trial.  Judge Ridge also denied the defense motion to bar the Commonwealth from seeking the death penalty.  After two and one-half (2½) days of jury selection, during which ten (10) jurors had been chosen, Petitioner indicated to Attorney Rubenstein that he wished to change his plea and enter a plea of guilty to Second Degree Murder and Robbery.

On June 29, 1989, Petitioner appeared before Judge Ridge with his counsel.  Petitioner entered a negotiated plea of guilty to Second Degree Murder and Robbery in exchange for the Commonwealth not proceeding on First Degree Murder and the death penalty.  Judge Ridge accepted the guilty plea.  At CC 198813518, Count 1, Second Degree Murder, Petitioner was sentenced to the mandatory sentence of life imprisonment.  At CC 198901399, Count 1, Robbery, Petitioner received no further penalty.

On July 6, 1989, Petitioner, through Attorney Rubenstein, filed a Petition to Withdraw Guilty Plea/Petition to Withdraw as Counsel.  On July 31, 1989, Petitioner appeared before Judge Ridge for a hearing on his Motion to Withdraw Guilty Plea .  Attorney Rubenstein represented Petitioner.  On August 18, 1989, Judge Ridge denied the Petition to Withdraw Guilty Plea.

On September 15, 1989, Petitioner, through Attorney Suzanne Swan of the Office of

Public Defender, filed a Notice of Appeal to the Superior Court.  On appeal, Petitioner raised the

following claim:

> I. Did the trial court err in denying Mr. Burnam's Motion to
> Withdraw Guilty Plea to Felony Murder which was not knowingly,
> intelligently, or voluntarily entered in that Mr. Burnam adamantly
> maintained that he did not steal or inten[d] to steal from Ms.
> Hopson or intend to kill or injure her; and counsel was ineffective
> for failing to ensure an on-the-record demonstration that the
> elements of the underlying felony of robbery were explained to and
> understood by Mr. Burnam, and that a factual basis for the plea
> was established during the colloquy?

On May 8, 1990, the Superior Court reversed the trial court's denial of the Motion to Withdraw

Guilty Plea and vacated the judgment of sentence.[2]

---

[2]  On November 2, 1990, Petitioner filed a federal habeas petition in this Court.  Burnam v.
Mazurkiewicz, No. 90-1835 (W.D. Pa.).  The Magistrate Judge issued a Report recommending dismissal
of the petition because the Petitioner was attacking his first guilty plea entered on June 29, 1989 and by
the time that the Report was filed, the Superior Court had already vacated that guilty plea and the life
sentence imposed as a result of the guilty plea and ordered the Court of Common Pleas to permit the
withdrawal of the guilty plea.  Dkt. [14-4] at 17.  In addition, the Report found that Petitioner was
complaining of the fact that he had not been brought to trial within the time period required by state law,
and that such a state law claim was not cognizable.  However, the Report then addressed the issue of
delay, and to the extent Petitioner was arguing unconstitutional delay, the Report found such a claim was
unexhausted.  Id., at 17.  To the extent that the present petition seeks to attack that first guilty plea
entered on June 29, 1989, it is possible that the present habeas petition is second or successive.
However, even if the present petition is not second or successive, because as the Report noted in his first
federal habeas petition, the Superior Court remedied any problems with the first guilty plea, any
complaints concerning that first guilty plea raised herein are simply moot.  Insofar as he complained of
delay in bringing him to trial after his guilty plea was vacated, this attack was really a pre-trial attack
pursuant to 28 U.S.C. § 2241, and not an attack on any conviction pursuant to Section 2254, stemming
from that later to be held trial, which is the object of the attack now and hence, the present petition is not
second or successive insofar as it attacks that trial which resulted in the current confinement.  See, e.g.,
Jacobs v. McCaughtry, 251 F.3d 596 (7th Cir. 2001)(habeas corpus petition by which defendant asserted
pretrial double jeopardy challenge to his prosecution was properly classified as a habeas petition under §
2241, which provided for habeas relief for those in preconviction custody, rather than § 2254, which was
appropriate habeas vehicle for prisoners in custody pursuant to state-court judgment, and therefore
federal habeas petition filed by defendant after he was convicted on charges underlying first petition was
not "second or successive" petition for purposes of statute restricting such petitions when brought under
§ 2254, which by its terms did not apply to § 2241 petitions.)

On February 11, 1991, Petitioner appeared before Judge Ridge. Attorney Brennan represented Petitioner. Petitioner completed a seven (7) page Guilty Plea Explanation of Rights form. Petitioner pled guilty generally to the charge of Criminal Homicide with the court to determine the degree of guilt. On February 12, 1991, Petitioner appeared before Judge Ridge for a non-jury trial. Attorney Brennan represented Petitioner. Petitioner waived his right to a jury trial on the Robbery charge. On February 15, 1991, Judge Ridge found Petitioner guilty of Robbery and determined that based on the facts, Petitioner was also guilty of First Degree Murder.

Petitioner decided that he wanted to proceed non-jury on the penalty phase of the trial as well. Following the presentation of testimony, Judge Ridge sentenced Petitioner to death. On February 25, 1991, Petitioner, through Attorney Brennan, filed a Petition Requesting Reconsideration of Sentence and Post-Trial Motions.

On October 30, 1991, Petitioner, through Attorney Brennan, filed a Motion to Withdraw Guilty Plea, Supplemental Motion for a New Trial, and Supplemental Motion to Arrest Judgment and a Motion for Leave to File Motion to Withdraw Guilty Plea, *Nunc Pro Tunc*, and Motion to File Supplemental Post-Trial Motions, *Nunc Pro Tunc*. On November 12, 1991, Judge Ridge denied Petitioner's Motion for Leave to File Motion to Withdraw Guilty Plea, *Nunc Pro Tunc*, and Motion to File Supplemental Post-Trial Motions, *Nunc Pro Tunc*.

On November 20, 1991, Petitioner, through Attorney Brennan, filed a Motion for Recusal of Judge Ridge. Dkt. [15-7] at 21 to 24. On December 11, 1991, a bifurcated hearing occurred before two different judges. First, Petitioner appeared before the Honorable Robert E. Dauer and testimony was taken from Judge Ridge. Second, Petitioner appeared before Judge Ridge and testimony was taken from Petitioner. Shelley Stark, Esquire, of the Office of Public Defender

represented Petitioner.  On December 11, 1991, Attorney Brennan filed a Motion to Withdraw

and for Appointment of Counsel.  On December 13, 1991, Judge Ridge denied the Motion for

Recusal.  On December 26, 1991, Judge Ridge appointed Charles J. Porter, Esquire, to represent

Petitioner.  On December 31, 1991, Judge Ridge granted the Office of Public Defender leave to

withdraw.

On December 31, 1991, Judge Ridge filed an Opinion, which denied Petitioner's post-

trial motions.   More than four years later, with no apparent movement of this case, on February

23, 1996, Attorney Porter filed a Motion to Withdraw.  On July 2, 1996, Judge Dauer granted the

motion and appointed Robert E. Stewart, Esquire, to represent Petitioner.  On June 27, 1996,

Petitioner, through Attorney Stewart, filed Supplemental Post-Trial Motions and a Petition for

Appointment of Specially Designated Judge.  On July 28, 1997, the Honorable David S. Cercone

issued an Order directing the Commonwealth to file a response.  On January 16, 1998, the

Commonwealth, through Assistant District Attorney Thomas N. Farrell, Esquire, filed a

Commonwealth's Brief in Opposition to both the Supplemental Post-Trial Motions and the

Petition for Appointment of Specially Designated Judge.  On May 28, 1998, Petitioner appeared

before Judge Dauer for an evidentiary hearing.  Judge Dauer was assigned to the case by Judge

Cercone, because Judge Ridge retired and became a senior judge on December 31, 1991.

Attorney Stewart represented Petitioner.  Following the hearing, on May 28, 1998, Judge Dauer

issued an Order of Court granting Petitioner a new sentencing hearing.  On June 30, 1998, Judge

Dauer denied the remaining post-trial motions.

On December 7, 1998, Petitioner appeared before Judge Dauer for the new sentencing

hearing.  Attorney Stewart represented Petitioner.  Petitioner's death sentence was vacated and

Petitioner was resentenced to life imprisonment.  At that time no appeal was filed.

On November 15, 1999, Petitioner, through Attorney Stewart, filed a Motion to File

Appeal Nunc Pro Tunc.  On February 17, 2000, Judge Dauer reinstated Petitioner's appellate

rights.

On March 17, 2000, Petitioner, through Attorney Stewart, filed a Notice of Appeal.  On

April 9, 2001, Petitioner, through Attorney Stewart, filed a Concise Statement of Matters

Complained of on Appeal Pursuant to Rule 1925(b). On November 18, 2002, the Honorable

Robert A. Kelly filed his Opinion.  Judge Kelly filed the trial court opinion because Judge Dauer

had passed away.  On January 10, 2003, Attorney Stewart filed a Petition for Leave to Withdraw

as Counsel.  On February 12, 2003, Diana Stavroulakis, Esquire, was appointed to represent

Petitioner.

On or about July 22, 2003, Petitioner through Attorney Stavroulakis, filed his Brief for

Appellant in the Superior Court of Pennsylvania, which raised the following claims:

> I. The verdict was against the weight of the evidence.
>
> II. Trial counsel was ineffective for advising Mr. Burnam to
> proceed to a non-jury trial, failing to object to a deficient colloquy,
> and for failing to seek recusal of the trial Judge, who had
> previously accepted Mr. Burnam's guilty plea.

Dkt. [16-4] at 12.  On January 23, 2004, the Superior Court affirmed the judgment of the Court

of Common Pleas of Allegheny County.  Petitioner did not file a Petition for Allowance of

Appeal in the Supreme Court of Pennsylvania.

On April 2, 2004, Petitioner filed a pro se Motion for Post Conviction Collateral Relief.

On November 19, 2004, the Honorable Jeffrey A. Manning issued an Order of Court appointing

Scott Coffey, Esquire as PCRA counsel.  On January 14, 2005, Attorney Coffey filed a Motion to

Withdraw as PCRA Counsel and Turner/Finley No-Merit Letter. On February 17, 2005, Judge

Manning issued an Order and Notice of Intention to Dismiss pursuant to Pa.R.Crim.P. 907(a).  On

March 17, 2005, Petitioner filed a Response to Order of Intention to Dismiss.  On June 20, 2005,

Judge Manning issued an Order of Court dismissing the PCRA petition and permitting the

Petitioner to proceed in forma pauperis on appeal.

On June 30, 2005, Petitioner filed a *pro se* Notice of Appeal.  On January 6, 2006,

Petitioner filed a *pro se* Brief for Appellant in the Superior Court of Pennsylvania, which raised

the following claims:

> I. WHETHER THE TRIAL COURT ABUSE[D] ITS
> DISCRETION WHEN IT DISMISSED APPELLANT'S PCRA
> PETITION AFTER APPELLANT DEMONSTRATED THAT HE
> RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL ON
> DIRECT APPEAL AS SAID APPELLATE COUNSEL FAILED
> TO FILE A TIMELY PETITION FOR ALLOWANCE OF
> APPEAL.
>
> II. WHETHER IT IS THE DUTY OF A PCRA ATTORNEY TO
> SEARCH THE RECORD AND INVESTIGATE CLAIMS THAT
> HAVE POTENTIAL TO BE, OR ARE COGNIZANT UNDER
> THE PCRA ACT, AND WHERE THERE APPEARS ON
> RECORD CLAIMS, AND PCRA COUNSEL "NO-MERIT"
> LETTER CAN NOT CONFORM TO ADEQUATE
> REPRESENTATION, AND VIOLATES APPELLANT'S
> CONSTITUTIONAL RIGHTS TO REDRESS OF GRIEVANCES,
> EQUAL PROTECTION OF THE LAW, AND DUE PROCESS
> OF THE LAW THAT ARE UNDER THE PENNSYLVANIA
> AND FEDERAL LAW.

Dkt. [17-2] at 5.  On June 26, 2006, the Superior Court affirmed the judgment of the Court of

Common Pleas of Allegheny County.  Dkt. [17-4] at 32 to 42.  Petitioner did not file a Petition

for Allowance of Appeal in the Supreme Court of Pennsylvania.

8

On August 14, 2006, Petitioner filed in the Court of Common Pleas of Allegheny County, a *pro se* Petition for Habeas Corpus Ad Subjiciendum.[3] See Dkt. [17-5] at 31 (date of signing is deemed date of filing pursuant to prisoner mail box rule). On December 28, 2006, Judge Manning denied the petition. Dkt. [17-7] at 7. On January 8, 2007, Petitioner filed a *pro se* Notice of Appeal. Dkt. [17-7] at 8 to 9. On July 17, 2007, Judge Manning filed an Order of Court, which explained his reasons for denying the state habeas petition. Dkt. [17-7] at 10.

On November 6, 2007, Petitioner filed a *pro se* Brief for Appellant in the Superior Court of Pennsylvania, which raised the following claims:

> I. WHETHER RELATOR'S DETENTION IS UNLAWFUL DUE TO HIS SIXTH, FIFTH, EIGHTH, AND FOURTEENTH AMENDMENT RIGHTS BEING VIOLATED WHEN THE TRIAL COURT DENIED RELATOR'S DUE PROCESS AND EQUAL PROTECTION OF THE LAW, WHEN TRIAL COURT DENIED RELATOR A DIRECT APPEAL TO THE SUPREME COURT OF PENNSYLVANIA AFTER THE EXECUTION OF SENTENCE OF DEATH.
>
> II. WHETHER RELATOR'S DETENTION IS UNLAWFUL WHERE HE WAS DEPRIVED LIBERTY WITHOUT DUE PROCESS OF LAW TO THE FIFTH AND FOURTEENTH AMENDMENTS, WHERE THE SUPERIOR COURT LACK

---

[3] In that state habeas petition, the following issues were raised:

1. Relator's detention is unlawful due to his Fifth, Sixth, Eighth, and Fourteenth Amendment rights being violated;

2. The Trial Court denied Relator due process and equal protection of the law, when Jerome Burnam was denied a direct appeal to the Supreme Court of Pennsylvania after the execution of a sentence of death;

3. Relator['s] detention is unlawful where he was deprived [of] liberty without due process of law to the Fifth and Fourteenth Amendments, where the Superior Court lack[ed] jurisdiction to ascertain Relator's direct appeal thereby rendering his commitment nugatory.

Dkt. [17-5] at 2.

9

[sic] JURISDICTION TO ASCERTAIN RELATOR'S DIRECT
APPEAL THEREBY RENDERING HIS COMMITMENT
NEGATORY [sic].

Dkt. [17-8] at 4.  On June 30, 2008, the Superior Court affirmed the judgment of the Court of

Common Pleas of Allegheny County.  On July 25, 2008, Petitioner filed a *pro se* Petition for

Allowance of Appeal in the Supreme Court of Pennsylvania, which raised the following claims:

> I. WHETHER APPELLANT'S DETENTION IS UNLAWFUL
> DUE TO HIS SIXTH, FIFTH, EIGHTH AND FOURTEENTH
> AMENDMENT RIGHTS BEING VIOLATED WHEN THE
> TRIAL COURT DENIED RELATOR'S DUE PROCESS AND
> EQUAL PROTECTION OF THE LAW, WHEN TRIAL COURT
> DENIED RELATOR A DIRECT APPEAL TO THE SUPREME
> COURT OF PENNSYLVANIA AFTER THE EXECUTION OF
> SENTENCE OF DEATH.
>
> II. WHETHER APPELLANT'S DETENTION IS UNLAWFUL
> WHERE HE WAS DEPRIVED LIBERTY WITHOUT DUE
> PROCESS OF LAW TO THE FIFTH AND FOURTEENTH
> AMENDMENTS, WHERE THE SUPERIOR COURT OF
> PENNSYLVANIA LACK[ed] JURISDICTION TO ASCERTAIN
> APPELLANT'S DIRECT APPEAL THEREBY RENDERING
> HIS COMMITMENT NEGATORY [sic].
>
> III. WHETHER THE TRIAL COURT ABUSED IT'S [sic]
> DISCRETION WHEN IT DISMISSED APPELLANT'S PCRA
> PETITION AFTER APPELLANT DEMONSTRATED THAT HE
> RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL ON
> DIRECT APPEAL AS SAID APPELLANT COUNSEL FAILED
> TO FILE A TIMELY PETITION FOR ALLOWANCE OF
> APPEAL.
>
> IV. WHETHER IT IS THE DUTY OF A PCRA ATTORNEY TO
> SEARCH THE RECORD AND INVESTIGATE CLAIMS THAT
> HAVE POTENTIAL TO BE, OR ARE COGNIZANT UNDER
> THE PCRA ACT, AND WHERE THERE APPEARS ON THE
> RECORD CLAIMS, AND PCRA COUNSEL'S "NO-MERIT"
> LETTER CAN NOT CONFORM TO ADEQUATE
> REPRESENTATION, AND A VIOLATED APPELLANT'S
> CONSTITUTIONAL RIGHTS TO REDRESS OF GRIEVANCES,
> EQUAL PROTECTION OF THE LAW, AND DUE PROCESS
> OF THE LAW THAT ARE UNDER THE PENNSYLVANIA
> AND FEDERAL LAW.

Dkt. [17-11] at 7. On December 16, 2008, the Supreme Court denied the petition.

On January 29, 2009, Petitioner filed the instant *pro se* Petition for Writ of Habeas

Corpus, Dkt. [4], and Memorandum of Law in Support of Petitioner's Petition for Writ of

Habeas Corpus, Dkt. [2], pursuant to 28 U.S.C. §2254(d). In that memorandum of law,

Petitioner raised the following issues:

> [A] WHETHER THE TRIAL COURT COMMITTED A BREACH OF
> CONTRACT BY IMPOSING A HARSHER SENTENCE ON APPELLANT
> DURING HIS RETRIAL.

[Dkt. [2] at 15].

> [B]. WHETHER TRIAL COUNSEL FAILED TO OBJECT TO THE
> DEFECTIVE GUILTY PLEA COLLOQUY.

> 1. APPELLANT DID NOT UNDERSTAND THE
> NATURE OF THE CHARGES TO WHICH HE WAS
> PLEADING GUILTY.

[Id., at 21].

> 2. APPELLANT WAS NOT INFORMED OF HIS
> RIGHT TO A NONJURY TRIAL BEFORE A DIFFERENT
> JUDGE THAN JUDGE RIDGE [.]

[Id., at 23].

> [C.] WHETHER TRIAL COUNSEL IMPROPERLY ADVISED
> APPELLANT TO PROCEED WITH A NON-JURY TRIAL BEFORE THE
> SAME JUDGE WHO PREVIOUSLY HEARD APPELLANT PLEAD GUILTY
> TO SECOND DEGREE MURDER[.]

[Id.].

> [D.] WHETHER TRIAL COUNSEL FAILED TO SEEK THE RECUSAL
> OF JUDGE RIDGE AFTER THE JUDGE HAD HEARD PREJUDICIAL
> EVIDENCE IN APPELLANT'S SUPPRESSION HEARING AND HAD
> HEARD APPELLANT PLEAD GUILTY TO SECOND DEGREE MURDER[.]

[Id., at 25].

11

[E.] WHETHER TRIAL COUNSEL FAILED TO MOVE FOR RECUSAL UPON LEARNING OF JUDGE RIDGE'S EX PARTE COMMUNICATION WITH COMMANDER RONALD FREEMAN ON THE SAME DAY THE NON-JURY TRIAL WAS TO BEGIN[.]

[Id., at 28]

[F.] WHETHER TRIAL COUNSEL FAILED TO OBJECT TO THE DEFECTIVE COLLOQUY ON APPELLANT'S WAIVER OF JURY TRIAL IN THE SENTENCING PHASE OF FIRST DEGREE MURDER, WHICH DID NOT CLEARLY ADVISE APPELLANT THAT A JURY VERDICT [of death] HAD TO BE UNANIMOUS[.]

[Id., at 28].

[G.] TRIAL COUNSEL FAILED TO MAKE A CLOSING ARGUMENT AT THE END OF THE PENALTY PHASE HEARING[.]

[Id., at 30].

[H.] WHETHER APPELLANT'S WAIVER OF HIS RIGHT TO A JURY TRIAL WAS INVOLUNTARY, UNKNOWING AND UNINTELLIGENT BECAUSE IT WAS COERCED BY TRIAL COUNSEL'S THREAT MADE TEN (10) MINUTES PRIOR TO THE START OF A RETRIAL, THAT TRIAL COUNSEL WOULD NOT REPRESENT APPELLANT UNLESS HE AGREED TO WAIVE HIS RIGHT TO A JURY TRIAL, AND BY TRIAL COUNSEL'S ASSURANCES THAT A NON-JURY TRIAL BEFORE JUDGE RIDGE WOULD LEAD TO A VERDICT OF THIRD DEGREE MURDER[.]

[Id., at 33]

[I.] WHETHER TRIAL COUNSEL WAS INEFFECTIVE FOR INTERCEDING WITH PRIOR COUNSEL, MARK RUBENSTEIN TO REMOVE MARK RUBENSTEIN FROM HANDLE [sic] THIS MATTER AND REPRESENT[ING] APPELLANT HIMSELF NON-JURY BEFORE JUDGE RIDGE BASED ON THE UNDERSTANDING THAT JUDGE RIDGE WOULD NOT IMPOSE THE DEATH PENALTY[.]

[Id., at 35].

[J.] WHETHER TRIAL COUNSEL FAILED TO DISCLOSE A CONFLICT OF INTEREST TO APPELLANT, ARISING FROM TRIAL COUNSEL'S CONTINUED REPRESENTATION OF APPELLANT IN HIS SECOND TRIAL AFTER APPELLANT HAD RAISED THE ISSUE OF TRIAL COUNSEL'S INEFFECTIVENESS IN HIS PETITION TO WITHDRAW HIS GUILTY PLEA[.]

[Id., at 37.]

       [K.] WHETHER TRIAL COUNSEL FAILED TO INTERVIEW DETECTIVE JAMES CARTER[.]

[Id., at 39.]

       [L.] WHETHER APPELLANT'S DETENTION IS UNLAWFUL DUE TO HIS SIXTH, FIFTH, EIGHTH, AND FOURTEENTH AMENDMENT RIGHTS BEING VIOLATED WHEN THE TRIAL COURT DENIED APPELLANT'S DUE PROCESS AND EQUAL PROTECTION OF THE LAW, WHEN TRIAL COURT DENIED APPELLANT A DIRECT APPEAL TO THE SUPREME COURT OF PENNSYLVANIA AFTER THE EXECUTION [sic, i.e., imposition] OF SENTENCE OF DEATH.

[Id., at 41].

       [M.] WHETHER APPELLANT'S DETENTION IS UNLAWFUL WHERE HE WAS DEPRIVED OF LIBERTY WITHOUT DUE PROCESS OF LAW TO THE FIFTH AND FOURTEENTH AMENDMENTS WHERE THE SUPERIOR COURT LACK[ed] JURISDICTION TO ASCERTAIN [sic, i.e., entertain] APPELLANT'S DIRECT APPEAL THEREBY RENDERING HIS COMMITMENT NEGATORY [sic].

[Id., at 46].

       [N.] WHETHER TRIAL COUNSEL [WAS] INEFFECTIVE FOR FAILING TO OBJECT TO THE SUFFICIENCY OF THE EVIDENCE TO SUSTAIN THE ROBBERY CONVICTION[.]

[Id., at 51].

       [O.] Appellant had no intent of stealing the victim's television and/or stereo as the Appellant could have sold his television and/or stereo for extra money for Christmas[.]

[Id., at 55].

       The Respondents filed an answer in which they raised, inter alia, the defense of procedural default and that the petition is meritless.  Dkt. Nos. [14]; [15]; [16] & [17].  The Respondents also caused the original state court records to be transmitted to this Court.  Petitioner filed a traverse.  Dkt. [20].

13

**AEDPA is applicable**

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I,

§101 (1996) (AEDPA), which amended the standards for reviewing state court judgments in

federal habeas petitions filed under 28 U.S.C. § 2254, was effective April 24, 1996.  Because

Petitioner's habeas petition was filed in the year 2009, AEDPA is applicable to this case.  Werts

v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

Where the state courts have reviewed a federal issue presented to them and disposed of

the issue on the merits, and that issue is also raised in a federal habeas petition, AEDPA provides

the applicable deferential standards by which the federal habeas court is to review the state

courts' disposition of that issue. See 28 U.S.C.§ 2254(d) and (e).

In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme Court has expounded upon the

standard found in 28 U.S.C. § 2254(d).  In Williams, the Court explained that Congress intended

that habeas relief for errors of law may only be granted in two situations: (1) where the state

court decision was "contrary to . . . clearly established Federal law as determined by the Supreme

Court of the United States" or (2) where that state court decision "involved an unreasonable

application of[] clearly established Federal law as determined by the Supreme Court of the

United States." Id. at 404-05 (emphasis deleted).  The Court explained the two situations in the

following terms:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the
> state court arrives at a conclusion opposite to that reached by this Court on a
> question of law or if the state court decides a case differently than this Court has
> on a set of materially indistinguishable facts.  Under the "unreasonable
> application" clause, a federal habeas court may grant the writ if the state court
> identifies the correct governing legal principle from this Court's decisions but
> unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13.  The Court of Appeals for the Third Circuit has also elucidated the "contrary to" clause by noting that "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." Werts v. Vaughn, 228 F.3d at 197 (quoting Matteo v. Superintendent, SCI-Albion, 171 F.3d 877, 888 (3d Cir. 1999)(en banc)).  Moreover, it is Petitioner's burden to prove the state court decision is either contrary to or an unreasonable application of clearly established federal law. See Matteo, 171 F.3d at 888; Werts v. Vaughn, 228 F.3d at 197.

 AEDPA also permits federal habeas relief where the State court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).

**Discussion**

As a general matter, although Petitioner argues in a conclusory fashion that the state court decisions were contrary to or an unreasonable application of Supreme Court precedent, he fails to even identify the relevant Supreme Court precedent he claims was incorrectly applied by the state courts.  For this reason alone, he fails to carry his burden to show entitlement to relief as to all of his claims.  Johnson v. Bagley, 544 F.3d 592, 596 (6th Cir. 2008)("Johnson remains in the rut of failing to identify a Supreme Court precedent that requires reversal or that the state courts unreasonably applied."); Wright v. Lafler, 247 Fed.Appx. 701, 706-07 (6th Cir.  2007) ("Wright fails to identify any relevant Supreme Court precedent that is contrary to the trial court's decision.");  Hammer v. Karlen, 342 F.3d 807, 811 (7th Cir. 2003)("As Mr. Hammer has identified no Supreme Court precedent the courts of the State of Wisconsin may have applied unreasonably in permitting the admission of prior bad act evidence against him, relief must be

15

denied as to the claim.")(footnote omitted); <u>Sepulveda v. U.S.</u>, 330 F.3d 55, 66 (1st Cir. 2003) (AEDPA requires state "petitioners to bear a different burden; they must demonstrate that the state court's adjudication of the claim 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'"); <u>Laemmle v. Michaels</u>, Civ.A. No. 08-333, 2009 WL 2602065, at * 5 (W.D.Pa. Aug. 24, 2009) ("Petitioner has cited no federal Supreme Court precedent nor has he even argued that such a disposition is contrary to or an unreasonable application of then extant federal Supreme Court precedent. For this reason **alone**, he fails to show that he merits relief under AEDPA.")(emphasis added).

In the alternative, as to Issue A, Petitioner claims the trial court breached a contract by imposing a harsher sentence, i.e., the death penalty than the sentence imposed when Petitioner pleaded guilty the first time and received only a life sentence.   Fist, we find this issue procedurally defaulted because although raised in the PCRA petition, <u>see</u>, <u>e.g.</u>, Dkt. [16-6] at 30, ¶10, it was not raised on appeal before the Superior Court. <u>See</u> Dkt. 17-4 at 35 (Superior Court opinion listing the sole two issues raised on appeal from the PCRA court's denial of relief). <u>Sistrunk v. Vaughn</u>, 96 F.3d 666, 671 n.4 (3d Cir. 1996) ("the rules [of Pennsylvania's appellate procedure] dictate that an issue raised at the trial level but not preserved on appeal will  not be considered by any subsequent appellate court.");  <u>Clay v. Sobina</u>, No. 06-861, 2007 WL 950384, at *8 (W.D.Pa. March 26, 2007)(finding a failure to raise any issues on appeal to Superior Court to constitute a waiver under state law and a procedural default under federal law); <u>Common-wealth v. Agie</u>, 296 A.2d 741, 741 (Pa. 1972)("We have consistently held that issues not raised in the court below are waived and cannot be raised for the first time on appeal to this Court.") (citations omitted).

Moreover, we find this issue to be meritless. Petitioner argues that there was some sort of contract plea agreement.[4] However, it is Petitioner's burden to establish the existence of and the terms of any purported plea agreement[5] and there were clearly no terms of any plea agreement that Petitioner would not be sentenced to death after his first guilty plea was withdrawn. Rather, the plea agreement was that Petitioner would plead guilty to an open charge of homicide and that the Court would decide the degree of guilt and it was contemplated that the Commonwealth would strive to prove a higher degree of murder, including first degree and Petitioner would strive to prove a lower degree of murder. See Dkt. [16-3] at 37 (Trial Court slip opinion rejecting Petitioner's claim that he believed he was pleading guilty to only third degree murder). Hence, Petitioner has established no term of a plea agreement or contract that the trial court failed to observe.

Next we turn to Issue B and whether trial counsel was ineffective for failing to object to an allegedly defective guilty plea colloquy where (1) Petitioner allegedly did not understand the nature of the charges to which he was pleading guilty and (2) where Petitioner was allegedly not informed of his right to a nonjury trial before a judge other than Judge Ridge. Judge Ridge addressed the underlying issue in his opinion on post trial motions, finding that "the [guilty plea]

---

[4] His argument is not very clear but appears to be that because there was a plea agreement the first time he decided to plead guilty, and because that first plea agreement was for a "lenient" sentence of only life, Dkt. [2] at 17, the trial judge was prohibited from imposing a harsher sentence after Petitioner's second plea (to an open charge of homicide). This argument is simply inaccurate factually as the second time he pleaded guilty, there was no agreement as to the sentence being anything, only that he would plead guilty to an open charge of homicide. At least Petitioner failed to prove any such agreement.

[5] United States v. Conner, 930 F.2d 1073, 1076 (4th Cir.1991) ("When a criminal defendant alleges a breach, he has the burden of proving, by a preponderance of the evidence, that the prosecutor failed to satisfy the terms and conditions of the agreement."); United States v. Holtz, No. Crim.A. 92-00459, 1993 WL 482953, at *4 (E.D. Pa. Nov. 15, 1993) ("the [criminal] defendant bears the burden of proving the existence of the promise not to prosecute by a preponderance of the evidence."). For "the government is held only to those promises that it actually made to the defendant." United States v. Peglera, 33 F.3d 412, 413 (4th Cir. 1994).

colloquy meets the requirements of the law and defendant's plea was knowingly, voluntarily and intelligently entered." Dkt. [15-8] at 16. Hence, given that the plea colloquy was not defective, his plea counsel, i.e., William Brennan, could not be ineffective for failing to raise a meritless claim. Werts v. Vaughn, 228 F.3d 178, 202 (3d Cir. 2000) ("counsel cannot be deemed ineffective for failing to raise a meritless claim"). In addition, Judge Kelly in his opinion on the post trial motions, addressed the Sixth Amendment ineffectiveness claim directly, rejecting it and finding that the record does not support any claim of ineffectiveness and in fact actually affirmatively rebuts some of the claims of ineffectiveness of Attorney Brennan with respect to the guilty plea.. Dkt. [16-3] at 37 to 38. More specifically, as to the claim that Petitioner was not made aware that he could proceed in a non-jury trial before a judge other than Judge Ridge, Judge Kelly found that Attorney Brennan testified that he had so informed Petitioner of his right to proceed non-jury before a judge other than Judge Ridge, but that Petitioner did not want to do so. Id., at 38 (Attorney Brennan "testified he discussed with Burnam that because Judge Ridge had taken his plea of guilty to second-degree murder he could seek to recuse the judge but that his client did not want to take a chance on another judge."). Petitioner has not carried his burden to convince this Court that Judge Kelly's disposition[6] was contrary to or an unreasonable application of then extant Supreme Court precedent and we find that it was not. Nor has Petitioner otherwise shown entitlement to relief under AEDPA. Hence, this issue does not merit relief.

---

[6] The Superior Court, on appeal adopted Judge Kelly's reasoning with respect to the ineffectiveness claims. Dkt. [16-5] at 50 ("The ineffectiveness claims raised by appellant were thoroughly discussed by the trial court and in denying relief we rely on the November 18, 2002 trial court Opinion of the Honorable Robert E. Kelly, P.J.")(footnote omitted).

The next issue, Issue C, is closely related. Petitioner claims that Attorney Brennan was ineffective for advising him to proceed non-jury before Judge Ridge who had previously conducted Petitioner's first guilty plea proceedings. Judge Kelly essentially found that Attorney Brennan recommended doing so only because of Attorney Brennan's knowledge of Judge Ridge's reputation for being somewhat averse to imposing the death penalty, implicitly finding Attorney Brennan's advice to have been a matter of reasonable strategy, and that hindsight cannot render ineffective what was then effective assistance ineffective. Dkt. [16-3] at 38 to 39. Petitioner has not convinced the court that this disposition is either contrary to or an unreasonable application of then extant Supreme Court precedent.

Next and relatedly, in Issue D, Petitioner contends Attorney Brennan was ineffective for failing to seek recusal of Judge Ridge after Judge Ridge had taken Petitioner's first guilty plea and had also heard allegedly "prejudicial" evidence against Petitioner in the suppression hearing. Judge Kelly rejected this claim as being without record support. Dkt. [16-3] at 41. This disposition is neither contrary to nor an unreasonable application of then extant Supreme Court precedent given that under Strickland, counsel is presumed effective and hence the burden is upon the Petitioner to come forward with evidence to rebut the presumption. See, e.g., Henderson v. DiGuglielmo, 138 Fed.Appx. 463, 468 (3d Cir. 2005)("To overcome the presumption that counsel was effective, petitioner bears the burden of establishing that counsel's performance was unreasonable under 'prevailing professional norms.'"); Sistrunk v. Vaughn, 96 F.3d 666, 671 (3d Cir. 1996)("There is thus every reason to believe that petitioner's appellate counsel made an informed judgment call that was counsel's to make. Even if the record did not provide this affirmative assurance, however, we would be required to so assume unless the petitioner has come forward with evidence to the contrary sufficiently probative to overcome the

19

'strong presumption' required by *Strickland*."); <u>Chandler v. United States</u>, 218 F.3d 1305, 1315 (11th Cir. 2000)("An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption [of counsel's effectiveness]. Therefore, 'where the record is incomplete or unclear about [counsel]'s actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment.'"). Hence, if the record is without support for a claim of ineffectiveness, as Judge Kelly essentially found here, a criminal defendant claiming ineffectiveness fails to carry his burden of rebutting the presumption of effectiveness. Petitioner fails to establish that this issue merits relief under AEDPA.

Alternatively, this precise issue appears to have been procedurally defaulted as it does not appear to have been raised either in the post trial motions or in the direct appeal, nor in the PCRA appeal and the state courts found it to have been waived. Dkt. [16-3] at 41 (finding that "Burnam also waived any right he had to recuse the trial judge because he [i.e., Judge Ridge] had accepted his [i.e., Petitioner's] pleas of guilty to second-degree murder and robbery." Noting that the District Attorney reminded Petitioner that Judge Ridge was the judge who accepted his first guilty plea and asked Petitioner whether he wished to have Judge Ridge decide the robbery and degree of homicide, and Petitioner responded in the affirmative).

Next, we take up Issue E, wherein Petitioner claims Attorney Brennan was ineffective for failing to seek recusal of Judge Ridge on the grounds that he had an ex parte communication with Commander Freeman, who eventually testified in Petitioner's trial. The factual premise of this claim is that before Petitioner's trial on both the degree of guilt as to the homicide charge and on the robbery charge, Commander Freeman came out of Judge Ridge's chambers and said something jokingly to counsel that he had spoken to the judge about the case and everything was taken care of. The state courts found that there was no improper ex parte communication

between Judge Ridge and Commander Freeman.  Dkt. [15-8] at 12 ("There was no discussion of defendant's upcoming trial.").  Petitioner has not carried his burden to show entitlement to relief under AEDPA.

In the alternative, we find this issue procedurally defaulted.   This precise issue of trial counsel's alleged ineffectiveness was never raised in Petitioner's  Concise Statement of Matters Complained of On Appeal, Dkt. [16-3] at 24 to 32.  The rule in Pennsylvania is that  "Where a defendant is ordered to file a concise statement of matters complained of on appeal, pursuant to Pa.R.A.P. 1925(b), and fails to raise a particular matter within that statement, the defendant is deemed to have waived that point of error on appeal."  Commonwealth v. Labron, 669 A.2d 917, 920 (Pa. 1995), cert. granted and reversed on other grounds by, 518 U.S. 938 (1996);  Morra v. Commonwealth, Dept. of Transportation, Bur. Of Driver Licensing, 667 A.2d 468, 469- 470 (Pa. Cmwlth. 1995)("Second, the record shows that Morra failed to raise the alleged error regarding the Department's burden of proof on the delay issue in his Concise Statement of Matters Complained of on Appeal (Statement).   The failure of Morra to raise the issue in his Statement constitutes a waiver of that issue and, thus, we will not consider it on appeal.").  Moreover, at the time of Petitioner's filing his Concise Statement in April 2001, the rule of waiver for failing to raise an issue was regularly applied so as to render it adequate.[7]  In addition, it is clearly

---

[7]  See Price v. James W. Wynder, __ Fed.Appx. __, __,  2009 WL 3497616, at *1 (3d Cir. 2009) ("After Price was convicted, Harris committed a procedural default by failing to file a timely Concise Statement of Matters Complained of on Appeal as required by Pennsylvania Rule of Appellate Procedure 1925(b)."), cert den. __ U.S. __, 2010 WL 251101 (U.S. Jan 25, 2010);  Buck v. Colleran, 115 Fed.Appx. 526 (3d Cir. 2004)(holding failure to comply with Rule 1925(b) constitutes a procedural default); Ross v. Attorney General of State of Pennsylvania, No. 07-97, 2008 WL 203361, at *6 to *7 (W.D.Pa. Jan 23, 2008) (finding failure to raise issue in Concise Statement which was filed in December 2000, constituted a procedural default);  Domes v. Wakefield, Civ.A. 05-457, 2006 WL 1437172, at *8 (W.D.Pa. Jan. 19, 2006)(finding that failure to raise issue in a Concise Statement of Matters Complained of On Appeal which was filed in November 1999, constituted a procedural default for habeas purposes).

independent of any federal question. Thus, absent a showing of cause and prejudice or a fundamental miscarriage of justice, this court cannot consider this issue. Given the overwhelming evidence of Petitioner's guilt, Petitioner could not, on this record, make either showing. In addition, this precise issuet appears to be procedurally defaulted for another, independent reason.[8] While this issue was raised in the PCRA petition, see Dkt. [16-6] at 31, ¶12, it was abandoned on appeal to the Superior Court from the denial of PCRA relief and, thus, yet again procedurally defaulted. See Dkt. [17-4] at 35 (Superior Court slip op., listing only two issues). Nor on this record could Petitioner make a showing of cause and prejudice or a miscarriage of justice so as to excuse his multiple procedural defaults of this issue.

Next, we take up Issue F, which is a claim that trial counsel was ineffective for failing to object to an allegedly defective waiver colloquy. Petitioner contends that the colloquy on his waiver of the right to a jury to determine whether Petitioner would receive the death penalty or life in prison was defective because the colloquy did not inform him that the jury's sentence of death would have to be unanimous. There are several problems with this argument. First, the argument is moot because the death penalty was vacated. Petitioner does not suffer any consequences of the death penalty and so his allegedly unknowing waiver of that right, which has no repercussions for him now, simply is irrelevant now at this stage and cannot provide a basis for relief. Second, even if it were not a moot issue, we find that this precise claim was procedurally defaulted for not being raised in the Concise Statement and/or for not being raised on direct appeal. Even if this precise claim had been raised in the PCRA petition, it was

---

[8] A separate issue of trial counsel's alleged ineffectiveness for failing to seek recusal of Judge Ridge was raised in the appeal to the Superior Court, but that issue was based upon seeking recusal of Judge Ridge on the basis that Judge Ridge had previously accepted Petitioner's first guilty plea. Dkt. [16-4] at 12.

abandoned on appeal to the Superior Court in the PCRA proceedings and, thus, again

procedurally defaulted.  See Dkt. [17-4] at 35 (listing only two issues as being raised in the

PCRA appeal).  Hence, this issue cannot provide Petitioner any relief.   In the alternative,

Petitioner fails to carry his burden to show that the state court's adjudication of this claim

(assuming that the state courts in fact adjudicated this precise claim) merits relief under AEDPA.

Judge Ridge in his opinion addressed an issue of the colloquy on waiver over sentencing

proceedings as follows:

> Defendant next alleges that the colloquy for the jury waiver
> for the sentencing proceeding was defective for failure to inform
> defendant that a robbery conviction could justify a death sentence
> and for failing to explain how the factfinder weighs aggravating
> and mitigating circumstances.  However, the record again
> contradicts these allegations.

[Dkt. 15-8 at p. 18].  We will as sume that the claim concerning the failure to explain how a

factfinder weighs aggravating and mitigating circumstances is the same claim as Issue F raised

herein.   Petitioner has not carried his burden to show that Judge Ridge's disposition of this claim

warrants relief under AEDPA.   Accordingly, for any of the foregoing reasons, this claim lacks

merit.

The next claim is Issue G, wherein Petitioner complains that his counsel was ineffective

for failing to make a closing statement at the end of the sentencing proceeding which resulted in

Judge Ridge imposing the death sentence on Petitioner.  For the same reasons as explained in

Issue F, any claim regarding the death penalty proceeding is now moot given that the death

penalty was vacated.  In the alternative, even if we were to review this issue de novo, Petitioner

fails to show any prejudice stemming from Counsel's failure to make a closing statement.   In the

alternative, this issue is procedurally defaulted for not being raised in the Concise Statement,

Dkt. [16-3]  and/or for not being raised in the direct appeal brief.  Dkt. [16-4].  While the issue

was raised in the PCRA petition, see Dkt. [16-6] at 30, ¶ 9, it was abandoned on appeal to the Superior Court, and hence, again procedurally defaulted.  See Dkt. [17-4] at 35 (listing only two issues raised on appeal).   Hence, for any of the foregoing reasons, this issue does not merit relief.

As to Claim H, Petitioner claims his trial counsel was ineffective for (1) coercing him to go non -jury by threatening to not represent Petitioner if he chose to have a jury trial and (2) assuring him that if he went non-jury before Judge Ridge, Petitioner would only get a third degree murder conviction.   It is not clear that this precise issue was ever raised in the Concise Statement or in the direct appeal brief or in the appeal to the Superior Court after the PCRA court denied relief.  Hence, to the extent this precise issue was not so raised, it is procedurally defaulted.   In the alternative, as the Respondents point out, the record belies Petitioner's assertion that it was counsel who coerced Petitioner into proceeding non-jury and there is no record support for the claim that trial counsel assured Petitioner that if he went non-jury before Judge Ridge, Petitioner could be certain that he would only get a third degree murder conviction. Dkt. [13] at 37 to 45.  See also Dkt. [16-3] at 39 (Judge Kelly's post trial motions opinion wherein he found "there is considerable reason to believe Burnam may have resisted a jury trial even if prior counsel had remained in the case.").  Petitioner has not carried his burden to show entitlement to relief under AEDPA and even if we were to review this issue de novo, we would conclude that the record does not support Petitioner's contentions.  Accordingly, for any of the foregoing reasons this issue of counsel's alleged ineffectiveness does not afford Petitioner a ground for relief.

Next, we take up Issue I, wherein Petitioner contends that Attorney Brennan intervened with Attorney Rubenstein (both of whom were from the Public Defender's office with Attorney Brennan being Attorney Rubenstein's supervisor) to have Rubenstein withdraw from

representing Petitioner.  Petitioner contends that if Brennan had not done so, Petitioner would
have proceeded with a jury trial given the conflict between Judge Ridge and Attorney
Rubenstein.  Judge Kelly addressed this issue in his post trial motions opinion.  Dkt. [16-3] at 39.
Judge Kelly essentially found that Attorney Brennan did not act improperly or ineffectively and
that it was Attorney Rubenstein who felt it was best for him to withdraw due to certain conflicts
Attorney Rubenstein had with Judge Ridge.  Judge Kelly essentially found Petitioner not credible
in his claims that Petitioner wanted to proceed with a jury trial and that Petitioner would have
done so had Attorney Rubenstein not withdrawn.   In addition, Judge Kelly found that Petitioner
failed to show how he was prejudiced.  Dkt. [16-3] at 40 ("In summary, this claim of error is not
persuasive and does not reflect how Burnam may have been prejudiced.").  Petitioner fails to
show that Judge Kelly's disposition of this claim entitles him to relief under AEDPA.
Alternatively, this issue is procedurally defaulted for not being raised in the direct appeal brief
and for not being raised in the appeal to the Superior Court after the denial of PCRA relief.

Next, we take up Issue J, wherein Petitioner claims that Attorney Brennan failed to
disclose a conflict of interest in the second set of proceedings.  This alleged conflict arose,
according to Petitioner, based upon the fact that on appeal from the first guilty plea to second
degree murder, Petitioner claimed ineffectiveness of Attorney Rubenstein of the Public
Defender's Office in the course of the first guilty plea colloquy, which appeal succeeded in
having the Superior Court order Petitioner's first plea to be withdrawn.  Petitioner contends that
his continued representation by the Public Defender's Office in the second set of proceedings
created a conflict of interest because he had previously (albeit through the Public Defender's
Office) alleged the Public Defender's ineffectiveness in the first guilty plea proceeding.  There
are several difficulties with this claim.  First, although raised in the Concise Statement, it was not

raised in the direct appeal brief, Dkt. [16-4] at 12, nor was it raised in the appeal to the Superior

Court after the PCRA court denied relief. See Dkt. [17-4] at 35. Hence, we find that this issue

was procedurally defaulted. In the alternative, we find that Petitioner has not carried his burden

to show entitlement to relief under AEDPA. Judge Kelly addressed this issue in his post trial

motions, essentially finding that there was no actual conflict of interest and also finding that there

was no prejudice. Dkt. [16-3] at 35. Petitioner does not argue that the state court's disposition of

this claim was contrary to or an unreasonable application of any Supreme Court precedent.

Indeed, he cites none and, hence, for this reason alone fails to merit relief. Nor do we find that

Judge Kelly's disposition of this claim merits relief under AEDPA. See, e.g., U.S. v.

Luciano, 158 F.3d 655 (2d Cir. 1998)(holding that even where ineffective assistance of counsel is

based upon a claimed conflict of interest, and prejudice is presumed, the presumption of

prejudice is a rebuttable presumption and finding it to have been rebutted in that case). Given

the presumption that state courts know and follow federal law,[9] we find Judge Kelly's statement

that Petitioner "does not now suggest how he was prejudiced in the subsequent plea and non-jury

proceedings in 1991" to be a conclusion that whatever presumed prejudice might have arisen out

of any conflict of interest, it was rebutted. Dkt. [16-3] at 37. Even if we were to review this

issue de novo, and even if we assumed without deciding that there was a conflict of interest, we

would conclude that any presumed prejudice arising from the assumed conflict was rebutted by

the record showing vigorous and effective assistance by Attorney Brennan. Accordingly, this

issue does not merit relief.

---

[9] Woodford v. Visciotti, 537 U.S. 19, 24 (2002)("This readiness [by the Court of Appeals on federal habeas review] to attribute error is inconsistent with the presumption that state courts know and follow the law."); Byrd v. Lewis, 566 F.3d 855, 861-62 (9th Cir. 2009)(on habeas review, federal courts are bound to presume that state courts know and follow the law, and have been instructed that state-court decisions be given the benefit of the doubt).

We next consider Petitioner's claim K, i.e., that trial counsel was ineffective for failing to interview Detective James Carter. Initially, we find this issue thrice procedurally defaulted; first, for not being raised in the Concise Statement, and secondly, for not being raised in the direct appeal brief. Dkt. [16-4] at 12. And thirdly, while it appears to have been raised in the PCRA petition, see Dkt. [16-6] at 29, ¶ 5, it was not raised on appeal in the PCRA proceedings in the Statement of Questions portion of brief and, hence, procedurally defaulted again. Accordingly, this issue cannot afford Petitioner relief. In the alternative, even if this Court were to review the issue de novo, it would conclude that Petitioner fails to establish prejudice from Attorney Brennan's alleged failure to interview Detective Carter. Petitioner asserts that "it is believed that Detective Carter's testimony could have contradicted that of Commander Freeman [who testified that Petitioner had confessed to the killing of the victim and that Petitioner stated he intended to rob the victim], supporting Appellant's claim that he never intended to rob the victim and had no premeditated intent to kill her." Dkt. [2] at 39. Petitioner's speculation as to what Detective Carter may have testified to is simply insufficient at this point to merit relief. Brownlee v. Haley, 306 F.3d 1043, 1060 (11th Cir. 2002) ("[s]peculation is insufficient to carry the burden of a habeas corpus petitioner as to what evidence could have been revealed by further investigation."). Accordingly, this issue does not merit relief.

Next is Petitioner's Issue L, wherein he claims that he was denied several of his constitutional rights when after the trial court imposed the death sentence, the trial court and court functionaries failed to follow state procedural rules that would have effectuated his direct appeal as of right to the Pennsylvania Supreme Court and that instead he had a direct appeal to the Superior Court. Related to Issue L is Issue M, wherein Petitioner contends that his detention is unlawful because the Superior Court lacked subject matter jurisdiction over his appeal filed

from Judge Kelly's decision denying Petitioner's post trial motions, after his sentence of death had been vacated by Judge Dauer. As to the first issue, i.e., Issue L, given that the death sentence was vacated, the denial of a direct appeal as of right to the Pennsylvania Supreme Court as provided in state law, is simply moot now. Even if his rights were somehow violated, we find that any error that may have occurred is either moot, or simply harmless error, i.e., had no substantial and injurious effect on Petitioner. See, e.g., Fry v. Pliler, 551 U.S. 112 (2007) (applying "substantial and injurious" standard to harmless error analysis in a habeas case where state court did not apply harmless error analysis).

As to the second issue, i.e., Issue M, the Superior Court's asserted lack of jurisdiction, we are unpersuaded. At the time of the appeal, Petitioner's sentence of death had been vacated and so at the time of the appeal from the sentence of life, even under state law, the Superior Court had subject matter jurisdiction over such an appeal. Thus, there was no error at all in appealing to the Superior Court and in having that court adjudicate the claims. Moreover, even if we accepted the fact that the Superior Court lacked jurisdiction over Petitioner's appeal, we would not accept his inference from that premise, i.e., that his confinement would be nugatory as he contends. There is no doubt that the trial court possessed subject matter jurisdiction over the crimes so that Petitioner was properly convicted and hence, his detention is not in violation of the Constitution. His remedy at most would be the re-institution of any appellate rights (e.g., direct appeal right to the Pennsylvania Supreme Court), not outright release from his detention. Again though, this Court concludes that any errors regarding which Court should have been appealed to, was and is harmless. Hence, these issues do not merit relief.

Petitioner's next issue, Issue N, is whether counsel was ineffective for failing to object to the sufficiency of the evidence to sustain a robbery conviction. Issue O is related in that

28

Petitioner asserts that he had no intent to steal the victim's television and stereo so as to obtain money for Christmas because Petitioner had his own television and stereo that he could have sold for money.   The direct claim of the sufficiency of the evidence to support a robbery conviction was raised in and addressed by the state courts.  Dkt. [15-9] at 13 to 14.  Judge Ridge found that "the record shows that defendant went to the victim's apartment intending to rob her.  (T.T. 136)."  Id., at 13 (the cited portion of the Trial Transcript may be  found at Dkt. [14-9] at 13, which is  the direct testimony of Detective O'Leary who testified as to what Petitioner had confessed to Detective O'Leary after Petitioner's arrest and after he was Mirandized and who testified that Petitioner confessed that he decided "he would go down and rob Miss Mary on the first floor").  Dkt. [14-9] at 13, lines 10 to 11.   Hence, as the state courts found, there was ample evidence of both the intent to commit a robbery and sufficient evidence of an intent to kill.  Judge Kelly, likewise found the verdicts were not against the weight of the evidence.[10]  Dkt. [16-3] at 43 to 44.  Because there was sufficient evidence of both the robbery and the first degree murder, Petitioner's counsel could not have been ineffective for failing to raise a meritless claim of insufficiency.  Werts.   As to the bald claim that Petitioner had no intent to rob given that he could have sold his own possessions for money, the state courts found that he possessed such an intent and the mere fact that he could have sold his own property for money does nothing to

---

[10] To the extent that Petitioner would attempt to raise herein a claim that the verdicts were against the weight of the evidence, such a claim is simply not cognizable here on habeas. Young v. Kemp, 760 F.2d 1097, 1105 (11th Cir. 1985)("A federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight' of the evidence");  Cameron v. Birkett, 348 F.Supp.2d 825, 838 (E.D. Mich. 2004)("a claim that the verdict was against the weight of the evidence presents a state law issue which is not cognizable on habeas review."); Davis v. Lavan, NO. CIV.03-40211, 2004 WL 2166283, at *9 (E.D. Pa. Sept. 23, 2004)("a claim that a verdict is against the weight of the evidence is not cognizable on habeas review because it requires an assessment of the credibility of the evidence presented at trial, and a state court's credibility determinations are binding on a federal habeas court.").

undermine the state courts' findings that Petitioner possessed the intent to rob the victim in this case. Hence theses issues do not merit relief.

Lastly, although not listed as a claim in the body of the brief in support of his habeas petition, Petitioner does raise an unelaborated claim that the state courts' disposition of his suppression claims was contrary to or an unreasonable application of Supreme Court precedent. Dkt. [2] at 4. Petitioner has not carried his burden to show such, nor on this record, could this Court conclude that the Suppression Court's finding that Petitioner was given his Miranda rights and knowingly, intelligently and voluntarily waived those rights constituted a disposition that would entitle Petitioner to relief under AEDPA. Accordingly, this issue does not merit relief.

Having found none of the issues raised merits relief, the petition should be denied.

**Certificate of Appealability**

A certificate of appealability ("COA"), which is a prerequisite for allowing an appeal to a Court of Appeals, should not be issued unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253 (c)(2). A "substantial showing" requires a habeas petitioner to show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right[.]" Slack v. McDaniel, 529 U.S. 473, 484 (2000). See also Walker v. Government of The Virgin Island, 230 F.3d 82, 89-90 (3d Cir. 2000).

Applying this standard to the instant case, the Court concludes that jurists of reason would not find it debatable whether the petition fails to state a valid claim of the denial of a constitutional right and/or that many of Petitioner's claims were procedurally defaulted. Accordingly, a certificate of appealability should be denied.

**Conclusion**

30

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties are allowed to file objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation, a copy of which docket entry is being sent to Petitioner along with this Report. Failure to timely file objections may constitute a waiver of any appellate rights. Any party opposing objections may file their response to the objections in accordance with Local Civil Rule 72.D.2.

Respectfully submitted,

/s/ *Amy Reynolds Hay*
Chief United States Magistrate Judge

Dated: 8 March, 2010

cc:   The Honorable Arthur J. Schwab
      United States District Judge

      Jerome Burnam
      BA-6023
      SCI Fayette
      Box 9999
      LaBelle, PA 15450-0999

      All Counsel of Record